# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ABBOTT LABORATORIES and CENTRAL GLASS COMPANY LTD., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 04 C 836 |
| BAXTER HEALTHCARE CORP., | ) ) | Judge Ronald A. Guzmán |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to Federal Rule of Civil Procedure 59(e), Abbott Laboratories and Central Glass Company Ltd. (collectively hereinafter "Abbott") have moved to reconsider the Court's granting summary judgment in favor of Baxter Healthcare Corp. ("Baxter"), *see Abbott Laboratories v. Baxter Healthcare Corp.*, 660 F. Supp. 2d 882, 890-91 (N.D. Ill. 2009). Baxter requests that the Court amend the judgment to reflect that it granted summary judgment as to Baxter's counterclaim for a declaratory judgment of noninfringement and seeks to voluntarily dismiss the other counterclaims without prejudice. For the following reasons, the Court denies Abbott's motion and grants Baxter's request.

## Discussion

"Rule 59(e) allows a court to amend a judgment 'only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence.'" *Egonmwan v. Cook County Sheriff's Dep't*, 602 F.3d 845, 852 (7th Cir. 2010) (quoting *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 417 (2008)). The decision of whether to grant or deny a Rule 59(e) motion "is entrusted to the sound judgment of the district court." *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

Abbott argues that, based on the testimony of its experts Dr. Lessor and Dr. Rogers,[1] it was manifest error of law to grant summary judgment in favor of Baxter.[2] "[S]ummary judgment is appropriate when the record reflects that there is no issue of material fact to be tried and the moving party is entitled to judgment as a matter of law." *Trentadue v. Redmon*, __ F.3d ___, No. 08-3442, 2010 WL 3239397, at *3 (7th Cir. Aug. 18, 2010). "We construe the facts and draw all *reasonable* inferences in favor of the nonmoving party . . . ." *Id.* (emphasis added). "A party must present more than mere speculation or conjecture to defeat a summary judgment motion." *Liu v. T & H Mach., Inc.*, 191 F.3d 790, 796 (7th Cir. 1999).

Abbott relies on *Martek Biosciences Corp. v. Nutrinova*, 579 F.3d 1363, 1374 (Fed. Cir. 2009), for the proposition that experts are not required to perform actual tests or experiments on the accused product to establish infringement. In *Martek*, the patentee sued a competitor for infringement of a patent that claimed a method for fermenting microorganisms in order to produce docosahexaenoic acid ("DHA") using a medium containing a non-chloride sodium salt, which reduces corrosion in the fermentor during the claimed process. *Id.* at 1367. To show that

[1]The Court disagrees with Abbott's contention that the ruling effectively guts the conclusions of Drs. Lessor and Rogers without a *Daubert* analysis. *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993). Both witnesses testified as experts at the trial in *Abbott Laboratories v. Baxter Pharmaceutical Products, Inc.*, 01 C 1867. As Baxter correctly argues, expert testimony can be admissible without being sufficient to create a genuine issue as to a material fact regarding infringement. *See, e.g., Kim v. Conagra Foods, Inc.*, 465 F.3d 1312, 1319-20 (Fed. Cir. 2006). Furthermore, Abbott's reliance on *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009), is unavailing because: (a) the Court did not strike Drs. Lessor and Rogers' testimony under *Daubert*; and (b) the *Vita-Mix* expert, Dr. Traylor, testified that, based on a double-blind survey of users of the accused device, conditions necessary for the accused device's infringement of the patent-at-issue were present a small percentage of the time, which contrasts with Drs. Lessor and Rogers, who failed to testify that the conditions were present in order for the phenols or hydroxy groups in Baxter's solid, insoluble liner to complex with Lewis acids.

[2]Other arguments raised for the first time in Abbott's reply brief are deemed waived. *See Gonzales v. Mize,* 565 F.3d 373, 382 (7th Cir. 2009).

the competitor's accused process met the functional claim limitation, one of plaintiff's experts testified that: (1) the competitor's culture medium contained sodium hydroxide, which causes less corrosion than a culture medium containing sodium chloride; (2) the competitor used stainless steel fermentors that are prone to corrosion; and (3) actual tests regarding the corrosive effects of chlorides on stainless steels were unnecessary because the body of written work produced by researchers regarding the corrosive effects of chlorides on stainless steels clearly established this as scientific fact. *Id.* at 1372-73. Plaintiff's other expert also testified that the competitor's process reduced corrosion based on his conclusion that the competitor's culture medium containing sodium hydroxide contained about one-third of the chloride ions present in a culture medium containing sodium chloride. *Id.* at 1373.

The Federal Circuit affirmed the district court's denial of the competitor's motion for judgment as a matter of law and concluded that a jury could have reasonably found that the accused process infringed plaintiff's patent. *Id.* In doing so, the *Martek* court distinguished *Kim v. Conagra Foods, Inc.*, 465 F.3d 1312, 1319-20 (Fed. Cir. 2006), the case upon which the competitor relied.

> The present case is unlike *Kim*. Martek did not rely on conclusory expert testimony to demonstrate that Lonza's medium reduces corrosion. As detailed above, Martek presented testimony from two experts, each of whom conceptually analyzed the accused process and testified that it must meet the functional claim limitation based on the composition of Lonza's culture medium and *the known* effects of chloride concentration on stainless steel corrosion. Contrary to Lonza's reading of *Kim*, we did not articulate a general rule requiring one who alleges infringement of a claim containing functional limitations to perform actual tests or experiments on the accused product or method. Instead, we stated only that "Kim did not prove infringement because she presented no testimony based on the accused products themselves that supported a finding of infringement." *Id.* Here, Martek presented expert testimony based on the accused process that supports a finding of infringement.

3

*Id.* at 1374 (emphasis added).[3]

The instant case is easily distinguishable from *Martek*. Unlike in *Martek*, neither Dr. Lessor nor Dr. Rogers testified that Baxter's insoluble, solid, epoxyphenolic resin liner inhibits Lewis acids.

Dr. Lessor merely testified that: (1) Baxter's solid epoxyphenolic resin liner has a phenolic structure within it and (2) phenols have the ability to complex with a Lewis acid. However, Dr. Lessor's testimony fails to connect the dots between the two statements. Simply put, although Dr. Lessor testified about the known ability of phenols to complex with a Lewis acid, he did not testify that the phenols in Baxter's insoluble solid liner are available on a molecular scale such that they would have the ability to complex with a Lewis acid. In fact, when asked whether there was any reason why the epoxyphenolic resin of the Baxter aluminum container cannot complex with a Lewis acid, he answered, "Well, it's not soluble in the sevoflurane . . . [and] [t]he Lewis acid and the putative complexing agent have to come into physical proximity with each other on the molecular scale. . . . One would have to determine whether the phenolic groups of the liner are in fact available for intimate molecular contact with the solvent." (Supplemental App. Pl.'s Resp. Def.'s Mot. Summ. J., Ex. I, Lessor Dep. at 481-84.) Because Dr. Lessor failed to present any evidence that the phenolic groups within Baxter's liner are available for intimate molecular contact with a Lewis acid, no reasonable jury could conclude anything from Dr. Lessor's testimony. Put another way, based on the record before the Court, it would be unreasonable to infer from Dr. Lessor's testimony that phenols have the ability to complex with a Lewis acid that the phenols within Baxter's insoluble epoxyphenolic

---

[3]Although Abbott argues that *Kim* is also distinguishable from the instant case because *Kim* involved "consisting essentially of" claims, it is notable that the court in *Martek*, the case upon which Abbott primarily relies, did not involve "consisting essentially of" claims and did not distinguish *Kim* on this basis. *See Martek*, 579 F.3d at 1369-74.

resin liner have the ability to complex with a Lewis acid such that the liner would inhibit a Lewis acid. In sum, to permit this case to proceed to trial based on Dr. Lessor's sheer speculation would have been a manifest error of law.

Similarly, Dr. Rogers testified that: (1) Baxter's liner contains hydroxy groups and (2) hydroxy groups have the ability to form covalent bonds with Lewis acids in the same way that phenols do. Although Dr. Rogers testified that the chemical reaction between hydroxy groups and Lewis acids is well-established and beyond question, he never testified that it is well-established and beyond question that the same chemical reaction would occur between Lewis acids and hydroxy groups contained in Baxter's insoluble epoxyphenolic resin liner. Dr. Rogers did not testify that the phenols in Baxter's insoluble solid liner are available on a molecular scale such that they would have the ability to form covalent bonds with Lewis acids. Again, this is precisely what distinguishes this case from *Martek*. Thus, Dr. Rogers' testimony fails to raise a genuine issue as to whether Baxter's liner inhibits Lewis acids.

In sum, Drs. Lessor and Rogers' testimony was not sufficiently based on an analysis of Baxter's insoluble epoxyphenolic liner itself. Because the Court concludes that it correctly granted summary judgment, it holds that there was no manifest error of law. Accordingly, the Court denies Abbott's motion to reconsider.

Although Baxter has not moved to alter or amend judgment, in its response brief filed thirty-nine days after the entry of judgment, Baxter requests that the judgment be amended to include a declaratory judgment that Baxter did not infringe U.S. Patent No. 6,677,492 ("the '492 Patent"). The Court construes Baxter's request as one pursuant to Rule 60(a), which provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment . . . ." *See* Fed. R. Civ. P. 60(a) ("The court may do so . . .

5

on its own, with or without notice.") Baxter's summary judgment motion was filed before Abbott filed its first amended complaint and before Baxter first filed its counterclaims seeking a declaratory judgment that the patent-in-suit is not infringed by Baxter.[4] As a result, the Court did not grant summary judgment as to Baxter's counterclaim for declaratory judgment as to noninfringement because Baxter had not included the argument in its summary judgment motion. This was a mistake arising from oversight, and therefore, relief under Rule 60(a) is appropriate. *See, e.g., Trzcinski v. Am. Cas. Co.*, 901 F.2d 1429, 1431 (7th Cir. 1990) ("So if the judge meant to resolve the counterclaim, then Rule 60(a) allows him to amend the judgment to carry out that plan.") Accordingly, the Court amends the judgment and enters a declaratory judgment that Baxter has not infringed, and is not infringing, U.S. Patent 6,667,492.

---

[4]Although Baxter also filed counterclaims seeking a declaratory judgment as to invalidity and unenforceability of the patent-in-suit, Baxter has agreed to voluntarily dismiss these counterclaims without prejudice. (*See* Def.'s Resp. Br. 10.) The Court construes Abbott's lack of response to this request as a lack of opposition to the voluntary dismissal of Baxter's two other counterclaims. Accordingly, the Court dismisses Baxter's counterclaims based on invalidity and unenforceability without prejudice.

## **Conclusion**

The Court denies Abbott's motion for relief from judgment under Rule 59(e) [doc. no. 98]. The Court grants Baxter's request for relief from judgment under Rule 60(a). The Court amends the judgment and enters a declaratory judgment that Baxter has not infringed, and is not infringing, U.S. Patent 6,667,492. Baxter's counterclaims for a declaratory judgment that U.S. Patent 6,667,492 is invalid and unenforceable are dismissed without prejudice.

SO ORDERED.                    ENTERED:    September 30, 2010

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**